case number 19-5337 VoteVets Action Fund Appellant v. United States Department of Veterans Affairs and Robert Wilkie in his official capacity as Secretary of the United States Department of Veterans Affairs. Ms. Jones for the Appellants Mr. Winnick for the Appellees. Ms. Jones. Thank you, Your Honor, and may it please the Court. Corianne Jones on behalf of Appellant VoteVets. Your Honors, the issue in this case is this. What are the reasonable inferences to be drawn from the many, many factual allegations set forth in VoteVets' amended complaint showing an extensive, coordinated, and continuous relationship between three private individuals who operated as a group to advise the Department of Veterans Affairs on a variety of policy matters over the course of a year and a half. Now, Appellees and the District Court below would turn this case into one of summary judgment, but it is not. VoteVets was not required at this stage of the litigation to prove up its claims. It was not required to make a probable case. It was required to make out a plausible case, and plausible taking all facts as true in the complaint and drawing all reasonable inferences in VoteVets' favor. Now, Your Honors, I think it's important to start and really focus on what makes this case so unique. This is not a case like the one that the Supreme Court was concerned about in Public Citizen, involving one-off consultations. This is also not a case like what this court was faced with in AAPS, where it described a group consisting of hundreds of different participants who didn't seem to really interact with each other and what this court called more of a horde than a committee. Instead, what you have here is three private individuals who describe themselves operating as a team, as a group, who the White House describes operating as a team, as a group, who the department describes operating as a team, as a group, working in close coordination with each other to advise the department over the course of 18 months. This is truly a unique case, and a unique case, Your Honors, that I might point out that really cuts to the heart of FACA. FACA was passed because Congress was concerned that the executive branch not be allowed to, behind closed doors, seek this sort of formalized advice from private individuals. This is precisely that kind of case. This is consistent, coordinated, extensive interactions between a group of the same private individuals, the same three guys, operating together to provide group advice to the department. How do we know that the president or the agency established this group from what you have alleged in your complaint? Sure, I think there are a number of facts that make it at least a reasonable inference that the president operating in coordination with the department established this group. And of course the established, the de facto FACA doctrine, really the totality of the circumstances, and particularly in the established context, courts look at, did the federal government conceive of the need for the group? Did they select the members? Did they task the group with their agenda? I think you see that in a number of ways. Our complaint alleges, of course, that President Trump met with these three individuals at the White House to discuss Veterans Affairs policy. He then announced shortly thereafter in a press conference that he was going to set up a group to advise the VA. Thereafter, Secretary Shulkin met with these three individuals and followed up with an email, the subject line was group meeting, in which he thanked the group of individuals who helped work with the VA. And then you see a course of conduct, 18 months, of these same three individuals working very closely and coordinatedly with the department to actually advise it. So I think taking the totality of the circumstances and looking at all of the facts in context, it very much is at least plausible, it is at least reasonable to think that President Trump said, I'm going to set up a group, that group starts to operate, and the reasonable inference is that he did, in fact, follow through on his intention to do so. Well, you cited in your complaint a ProPublica article, and that article said that Perlmutter set up the group, or at least fairly read, that's what it seems to say. So if that's the case, can't we use that article to help interpret what the plausible, I guess, what we can reasonably infer from your factual allegations since you cited it? Well, I think what that article makes clear is that it was certainly Ike Perlmutter's relationship with President Trump that sort of enabled this group to be brought into being, and that's acknowledged in the joint statement that the three individuals issued. But this is certainly not a case like in Food Chemical News or in BIRD, where there's no involvement from the federal government in the establishment of the council, even if Ike Perlmutter played a significant role perhaps in, you know, what it might look like. The federal government, our complaint establishes or alleges facts that do make clear that the federal government did have at least some involvement, and in fact a significant involvement, in conceiving of the need for the group, selecting the members, and sort of starting the group out on its task of advising the VA. I'd also point out, Your Honors, that of course we don't have to prove that the federal government established the council. We could also prove in the alternative that the federal government utilized the council, and we similarly think we've alleged sufficient facts to make that case plausible as well. Of course, utilized takes on a sort of unique context or a unique definition in the FACA context. As this Court has described it citing public citizen, the question is whether the group is so closely intertwined with the federal government as to be amenable to strict control and management. But in understanding that I want to step back and look at the reasoning of public citizen, and what public citizen says is that utilized is essentially an extension of the term established, and it's meant in such a way so that FACA covers groups that are not only created by the federal government, but also created for the federal government. As the Supreme Court in public citizen sort of explains, the question is, did the government sort of permeate the group? I think that's this group existed solely for the purpose of advising the Department of Veterans Affairs during this 18 months. This is very much unlike the ABA Committee, which of course is a separate long-standing institution that has its own funding structures, and its own priorities, and in its own work process flows. This is a group that was closely intertwined with the department. The department in... I didn't mean to interrupt you, but I had a question. You mentioned a couple of times that this group functioned for 18 months, and I wondered whether it's finished, and whether, if that's the case, do we have any mootness issues? Yes, Your Honor. To the best of our knowledge, yes, the group stopped functioning, I think back in sort of middle of 2018 to our best guess. However, this court made clear in comic vigor that Section 10 records claims under FACA are not mooted by the termination of an advisory committee. So we do think very much that our Section 10 records claims are very much alive. So if they provided the documents, that would moot the case? I think that our only claim for relief that remains alive are the outstanding documents claims, that's correct. I'm sorry, go ahead. I didn't mean to interrupt. I did point out that there's been no contention here that the department has released the records it's required to release, and so I think absolutely that remains. What's left after what you've already gotten under FOIA? Well, Your Honor, first of all, I point out that just because the documents have been released to us under FOIA, the government's responsibility here is to make them public. I believe some of the documents have been put on the record that they all have been and that they all are still there. I'd also point out that through FOIA, the department has searched the emails of government officials and the private emails of Secretary Shulkin. The government has never, to this date, searched the emails of these private individuals or seen what documents might have been shared amongst those private individuals, and that very much could turn up documents that would come within Section 10B's question about that just the basic theory, and this is, as you mentioned, a kind of a different fact pattern, but it struck me that under Section 9, 5 U.S.C. Section 9, the statute says no advisory committee shall be established unless it's specifically authorized by statute or by the president or by an agency, and in a way, I mean, the analytic effort of the briefing is, you know, to fit it in, or the blue briefing is to fit it into FACA and basically say it is an advisory committee and therefore is held to the requirements, but in a way, the this group operating as it's alleged to have operated would be unlawful. It isn't. It could not be a lawfully functioning FACA group, and so I'm just trying to make sense of how to understand that and how to understand your briefing in light of that. Mm-hmm. I do say I'm over my time and just want to make sure that I can quickly answer. So yes, I think the issue here is when you have the government creating behind closed doors a group to work extensively to advise it, as has happened here, that may raise significant FACA concerns and FACA violations as we allege, but that doesn't, that should not be allowed to cover the government, or it shouldn't mean that the government didn't need to comply with FACA. I think what AAPS looks at is, is this the kind, you know, this is de facto FACA doctrine. AAPS says, is this the kind of formal group that you would expect the government to only utilize or only work with if it's operating through the appropriate FACA channels? And AAPS also makes clear that FACA should not be written, should not be read in a way as to become easy to read. If the government could avoid the requirements of FACA simply by setting up a FACA and giving it so much authority and operating in such an unlawful manner, that would essentially render FACA a melody. So I'd urge the court not to accept that reading, to find that this was a de facto FACA advisory committee, and to allow the case to proceed on that. Thank you. Further questions from the panel? Okay, in that case we'll take a turn to Mr. Winnick. Good morning, Your Honor. May it please the court, Daniel Winnick for the government. The complaint doesn't come close to alleging a group with the sort of organized structure that this court described in AAPS as a key characteristic of an advisory committee, and even if the alleged group was structured as an advisory committee, the complaint doesn't plausibly allege that it was established by the government. Let me start with the nature of the so-called counsel. As the It was meant instead to address the proliferation of a specific type of group rendering advice to the executive branch, the proverbial Blue Ribbon Commission. And to avoid constitutional concerns, the Supreme Court and this court have construed FACA as limited to those types of groups. As the court put it in AAPS, groups that have, quote, an organized structure, a fixed membership, and a specific purpose. That's why, for example, in the unbanked decision in Cheney, the court described the right to vote on proposals or to veto a consensus as a hallmark of membership on a committee. The court said it wasn't enough to simply sort of participate in meetings or be there. What's alleged here is nothing we submit in the neighborhood of that sort of structure. When the complaint here describes a meeting of the so-called counsel, what it's call or a meal or a conversation of some sort between a VA official and one or two of the individuals alleged to have composed the counsel in which those one or two people gave some advice. And plaintiff is suggesting that FACA applies to virtually every interaction like that. Mr. Winnick, assume for purposes of this question that there, whatever degree of formality is required, that there is a combination of allegations sufficient for plausibility that it was established by the government. So you have an allegation supported by a Boston Globe article which seems more than plausible. The information came from Sean Spicer and that is that the president met with advisers about advising the veterans affairs department and that all three of these people were in the meeting, in the room. Then the president announces that we're going to be talking to a few people also to help David, at that point a putative secretary. We're going to set up a group and then mentions Ike Perlmutter. Why isn't that enough for, I appreciate this is not enough for summary judgment, but why isn't that enough for it to be plausible that the president established this group? Assuming that the group is sufficiently formal in the way that you were discussing. Understood. So two distinctions I think with the sort of narrative as recounted in this question. First, the December 2016 meeting between the president-elect and a group of advisers on veterans issues was a meeting that according to the complaint and the public reporting, Perlmutter and Moskowitz and Sherman helped to convene. But it was a meeting between the president-elect and a group of health care executives principally. And when the president-elect spoke the next month in a sort of vague way about creating a group to advise the VA secretary, what he described was again that same sort of group. A group principally consisting of health care executives and doctors in which Ike Perlmutter, he had mentioned the other two, would had sort of had been involved in the effort to create such a group. Again playing according to complaint a convening role. So if this were a group that were that were sort of like the one described in the in the in the press conference, it might be a closer case. But fundamentally this isn't the group described. Well that's that's a good question. So under, well it doesn't matter whether it's the only plausible possibility. I take your point that there's another plausible possibility here. But and that would certainly get you past summary, you know stop at summary judgment if that was all there was. But why doesn't this at least get the complaint, get past the complaint? Your argument is plausible but it's also plausible that the group he was referring to included these three people and that it was set up as he said to advise David. So it's just a question of plausibility. That's that's all that's all that we're at the stage now as opposing counsel points out. Understood. So there are basically two reasons. The first I think is that there simply isn't enough factual basis in the complaint to make the inference that plaintiff is suggesting non-speculative. Really it is when they say the president named Perlmutter the chair of the committee in Moscow. Okay I understand that that's that's a that's a legal conclusion from the facts. But the question is are the facts sufficiently plausible to indicate that the president or the president in combination with David has set this set this up. He said we're going to create a group. Well so first of all your honor I want to make it clear that it's important whether it was the president or the president in combination with with Perlmutter setting up this. No I didn't mean with combination with Perlmutter. You mean with Secretary Shulman. That's to David I'm talking. Okay. Is Perlmutter's name David also? I don't think so. No sorry your honor. And I don't mean to refer to David as you know like I know him. No no. But there's a president referred to him that way so. That's right but but but again I mean the point I was meeting with was that it is it is crucial under this court's case law not only that the government in some sort of loose way conceive of the need for a group in the way that that that plaintiff was suggesting but that the government actually appoints the three members and we don't think we think in fact the ProPublica article on which plaintiff relies defeats that that notion. But the second response I had to your honors I'm sorry. No I don't want to interrupt the flow. Go ahead. Just briefly the second response is that Iqbal also says that even where a narrative might otherwise be a plausible inference from the complaint its plausibility can be can be defeated by the presence of an obvious alternative explanation which we think is present here as documented in the statement of the three men. I'm sorry Judge Pillard. No I apologize for interrupting. So the district court and I'm on JA 64 concluded that the allegations throughout the amended complaint that the three men exercised influence over the department and I know this is on utilize and not on established but to me the two are kind of cross-cutting the allegations that they exercise influence of the department undermines any reasonable inference that the defendants that the defendants the department exercise actual management and control over them and I wonder if you're defending that reasoning and the reason that I raised it in connection with what what you and and Judge Garland were just discussing is that there are questions sort of who took the initiative and and one way of facts alleged here is that it's actually even worse you know that the utilized and established is you know do we even have the kind of relationship between the government and the and the private actors that implicates FACA and here it seems like it's gone even beyond the cases that we've seen before in the sense that these folks you know let's say let's say and I'm not saying that I think the theory underlying the complaint is three people get together they say we've got a lot to contribute they approach the president the president says gee I think that's a great idea and the three people are kind of an you know external group that then has a controlling force over an these allegations rise to that level and plausibly allege that is that kind of activity something that implicates FACA or not it's not your honor FACA was was meant to address a specific type of proverbial blue ribbon commission what your honor is describing I understand you know how it might be sort of concerning in a policy sense it might implicate other others you know sources of law such as you know ethics laws or something like that but it's not the sort of thing FACA was meant to address as your honor is is hypothesizing this is a group that was sort of exercising undue influence is is almost definitionally not an advisory committee certainly not one that is utilized by the government within the meaning of the utilized analysis in other words one that's operating under the close management or control of the agency or within parameters set by the agency so just to interject there it seems like one way of understanding the close management and control arising in the context of the ABA advising on the qualifications of nominees is to sort of differentiate an outside entity just giving advice take it or leave it you know here's our white paper we think you should reorganize the VA this way we think you should you know these judges are qualified or not in these ways and and and it's kind of a here's this product take it or leave it and what the public citizen analysis is saying is that's okay what's not okay is if the government's saying here let me outsource this to the ABA we want you to look at these various criteria and you're gonna tell us in out to meet our whether these people are qualified or not and the latter is seems to me what public citizen is concerned about when it's talking about direction and control but if the government just said we don't even have criteria ABA you tell us what judges we should pick and actually what criteria we should use it seems to me the abdication of of control and direction by the government in that situation wouldn't take it out of FACA which is a little bit what I take your argument to be suggesting but rather put it more squarely into in under FACA so I think that if if the group is of the sort that FACA was meant to cover then certainly the undue the exercise of undue influence by such a group you know does implicate FACA but our central point here is that it just this this doesn't just isn't the sort of group FACA was meant to cover and I would note as this court has said in AAPS and and Cheney and as the Supreme Court said in public citizen it is both a matter of long historical practice and and you know close to the heart of the constitutional protection of the executive for the president and other senior executive officials to be able to address any subjects that they wish from people outside government so you know if if if as plaintiff alleges the president said you know I want I want I pro-mutter to provide lots of advice on veterans affairs and I want my secretary of the VA to take his advice quite seriously not literally to be found by it in a legal sense but to hear it and I consider him a you know a wise advisor that that is exactly the sort of thing the president is constitutionally empowered to do and is he is he not was it does it not bring it into FACA if he says I want Ike and these other two I want them to be a group an interface with doctors and health care professionals decide some priorities for us and come back to me with that is that similarly just the president drawing on outside advice in a way that doesn't implicate FACA I think that's correct or I mean to the extent that that it would runner is highlighting is that it's group and not a single individual you know I think again if we were applying the sort of the structure analysis of a APS to look at whether this was the type of entity that FACA was meant to cover then the fact that there's more than one person would be a prerequisite but it's not sufficient that there be more than one person or they have to be you know as the court said in Cheney to be voting on things they could be coming to formal consensus the fact that you have two people or three people instead of one person providing advice as individuals or even in some sort of loosely affiliated sense isn't enough to be to be covered by FACA and you know on the broader question of whether Congress was was sort of meaning to you know in a kind of broad way subject the whole provision of advice from outsiders to insiders to strict you know requirements and what the what the court said in public citizen I think usefully is there's considerable evidence and I'm quoting that Congress sought nothing more than stricter compliance with reporting and other requirements which were made more stringent by advisory committees already covered by a prior executive order and with similar treatment of a small class of publicly funded groups created by the president in other words it was trying to impose stricter requirements and the heightened enforcement of those requirements for a small class of groups a particular type of group it wasn't meaning to impose you know stringent procedural requirements and sunshine on all kinds of the provision of advice to people in government whether by one person or as Rana suggested you know a small group of people had it done so I think I think both public citizen in this court's cases have suggested you arise all right no further questions we'll give miss Jones a chance for rebuttal why don't you take two minutes thank you your honor I just wanna make a couple of quick points first of all opposing counsel raises Cheney several times and says that you know this this wasn't the kind of committee that would be considered advisory committee under Cheney Cheney was very specifically related to a White House Advisory Committee and the court in Cheney was was clear that the reason it was imposing this voter veto standard was because the president sort of does have this understanding is understood to have a little bit more leeway to seek advice and so the standard needed to be higher no court in this circuit or any circuit from from my knowledge has ever applied that heightened voter veto standard to advisory committees that are principally advising the department and I also think just that principally devising the department point is important opposing counsel again says this isn't the kind of committee that was meant to be covered by FACA and the president has a lot of authority to or a lot of a sort of leeway to seek advice this wasn't principally a group that was advising the president this is a group that was advising the department and working with the department officials daily to advise them on a not just one matter but but a whole number of very important matters including being involved in a procurement process for a multi-billion dollar contract at the the department was in the process of developing this is exactly the kind of thing that FACA was meant to to to prohibit so what are the what are the minimum criteria in the sense of is it the group character is it ongoing nature is it the apparently maybe it's the fact that these people seem to have so much authority because they were understood to be blessed by at least as the allegations have it blessed by the president you know which again is a little bit of an awkward fit with some of the doctrine on utilization what what are the what are the minimum hallmarks in your view well I think you know I think the minimum hallmarks are probably all of the above I think what you have here is a fairly egregious case involving the same three individuals operating as a group advising over the continuously over the course of 18 months and advising on important issues and seeming to often to to to wield a significant amount of authority I think that that that doesn't make this not an it makes this an illegally operating Advisory Committee but I do think again it's this consistent coordinated ongoing relationship the precise kind of thing that FACA was was passed to prohibit the unfettered use of private groups of private advisors by the executive branch outside of any scrutiny by Congress or the public the questions from the bench all right we'll take this matter under advisement we appreciate this is a very very nicely argued and we'd like the tenor of the argument as well so I appreciate that from both of you all right take the matter under submission
judges: Garland, Pillard, Wilkins